UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY P. DEBIAS

                **Plaintiff,**                **CIVIL ACTION NO. 05-CV-73809-DT**

      **vs.**                       **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

                **Defendant.**
_____/

## REPORT AND RECOMMENDATION

I.    **RECOMMENDATION**

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED**
(Docket # 8), that Plaintiff's Motion for Summary Judgment be **DENIED** (Docket # 7), and that
Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE.**

II.    **PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security
that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382.
The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Anthony P. Debias filed an application for Disability Insurance Benefits (DIB) with a
protective filing date of December 2, 2002. (Tr. 48-51). He alleged he had been disabled since February
8, 1999. *Id.* Plaintiff's claims were initially denied in a notice dated May 6, 2003. (Tr. 29). Plaintiff
sought a review hearing before an Administrative Law Judge (ALJ). (Tr. 37-38). A hearing took place
before ALJ Kathryn D. Burgchardt on April 8, 2005. (Tr. 250-87). Plaintiff was represented by an
attorney at the hearing. (Tr. 35-36, 252). The ALJ denied Plaintiff's claims in an opinion issued on
April 27, 2005. (Tr. 16-28). The Appeals Council denied review of the ALJ's decision on August 6,

2005 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 14-15). Plaintiff appealed the denial of his claim to this Court and both parties have filed motions for summary judgment.

## III.   **MEDICAL HISTORY**

Plaintiff was the victim of a hit-and-run accident on February 8, 1999. (Tr. 127). Plaintiff thereafter complained of musculoskeletal aches. There was no evidence of a fracture and Plaintiff had deep tendon reflexes which were 2+ and symmetric, and a normal gait. *Id.* Relafen and Skelaxin were prescribed and it was noted that Plaintiff was recovering satisfactorily. *Id.*

On February 18, 1999 Plaintiff reported continuing aches and pain, especially in his left hip and lower back. (Tr. 129-30). Plaintiff described the pain as starting at his left hip and radiating towards his left knee. Plaintiff also complained of paresthesias of his lower extremities. *Id.* An examination showed that Plaintiff's hip joint had full range of motion with full extension, flexion and abduction, but some pain upon adduction. His knee joint was nontender with full range of motion. Sensory function was intact to light touch and pinprick but there was decreased sensation to vibration bilaterally. Plaintiff was able to do a straight leg raise to 90 degrees bilaterally without much discomfort. *Id.* Plaintiff was prescribed physical therapy. *Id.* Plaintiff reported in the end of February 1999 that the physical therapy helped and his pain had significantly decreased. He also stated that he only took ibuprofen, which controlled the pain. More physical therapy was recommended. (Tr. 131). It was also noted that Plaintiff reported that he had a history of heavy beer drinking for which he had undergone a rehabilitation program but that he was no longer drinking alcohol. *Id.*

By March 1999 Plaintiff reported that he had attended physical therapy on several more occasions but that there had been no improvement. He also said that he noticed his left foot dropping

and that he had left leg and foot paresthesias. (Tr. 133). An examination yielded normal results with the exception of a slight decrease in sensation to pinprick in the left lower extremity. *Id.*

Medical records from May and June 1999 indicate that Plaintiff's back pain had improved and examination results were essentially normal. (Tr. 136, 144). Records from August 1999 state that Plaintiff had been evaluated by Physical Medicine and Rehabilitation and that they had found evidence of hip instability. Plaintiff was therefore prescribed a six-week course of twice-a-week physical therapy. (Tr. 147). An October 1999 report notes that Plaintiff still reported pain in his left hip, which he rated as a 5-6 out of 10, but that his medications (Celebrex and Elavil) were helping. No significant examination findings were noted except that Plaintiff's gait was normal. (Tr. 149).

Progress notes from March 2000 indicate that Plaintiff had stopped attending physical therapy due to the pain. Plaintiff also indicated that he tried to exercise but the pain was too excruciating. Concern was expressed over Plaintiff's weight gain due to inactivity. Diet options and alternative exercises were discussed. (Tr. 150).

On May 21, 2000 Plaintiff went to the emergency room. It was noted that he was quite intoxicated and that Plaintiff said he regularly drinks "this much." His blood alcohol level was twice the legal limit. (Tr. 168). Plaintiff reported that he had numbness on the left side of his head, arm and leg with difficulty focusing, slurred speech, and facial drooping. Examination results were not significant. (Tr. 154). However, doctors decided to admit Plaintiff to the hospital for further evaluation of a possible transient ischemic attack ("TIA"). (Tr. 155). Plaintiff had a repeat TIA on May 23, 2000. Plaintiff was subsequently discharged on May 27, 2000. His discharge records indicate that examination findings showed no evidence of a stroke. A CTS scan of Plaintiff's head was normal. MRIs of Plaintiff's spine showed no fractures but there was an osteophyte formation indicative of degenerative disc disease. (Tr. 156-65). Follow-up records from June 2000 state that Plaintiff was diagnosed with

a possible cardiovascular accident ("CVA") rather than a TIA.  The notes also indicate that Plaintiff began

attending Alcoholics Anonymous ("AA") three times a week.  (Tr. 168).  The records also note that

Plaintiff reported episodes of acute depression where he would become very tearful.  Medication was

prescribed.  (Tr. 170).  Plaintiff also reported only one episode of numbness since his hospitalization.

*Id.*

Records from July 2000 indicate that Plaintiff's problems with alcohol and depression continued.

(Tr. 174-76).  He was diagnosed with "alcohol abuse, rule out major depression secondary to substance

abuse."  (Tr. 175).  Plaintiff reported that he was down to one or two beers a week in September 2000

but was no longer attending AA.  (Tr. 179).

Plaintiff's reports of pain in his left hip and back continued in 2001.  (Tr. 180-82, 185-88, 190-

205).  He was prescribed Vicodin in August 2001, which gave him relief for 2-3 hours.  He was also

taking Celebrex and Neurontin.  (Tr. 187).  An examination in late August 2001 indicated that Plaintiff

had a positive straight leg raising test on the left lower extremity at 10 degrees.  (Tr. 192).  Left pelvis

and hip x-rays from August 2001 were negative.  (Tr. 189, 196).  An MRI was taken of Plaintiff's lumbar

spine in September 2001 which showed: (1) posterior protrusion of L4-5 disc with mild hypertrophy

of ligamentum flavum resulting in moderate to severe spinal canal stenosis with compression of dural

sac and narrow conditions of L4 nerve root; (2) diffuse posterior bulging of L3-4 intervertebral disc

resulting in mild to moderate spinal canal stenosis with compression of dural sac; and (3) mild posterior

bulge L5-S1, indenting the ventral surface of the dural sac but without frank compression and narrowing

of the left L5 nerve root secondary to extension of the bulging L4, L5 and S1 into the left neural canal.

(Tr. 197, 199).  Physical therapy was again recommended.  (Tr. 200).

Plaintiff showed a decreased range of motion in back flexion, lateral side bending, and lateral

extension bilaterally in October 2001.  (Tr. 200).  On October 2, 2001 Plaintiff received an epidural

steroid injection.  (Tr. 201).  A November 2001 letter from the Department of Physical Medicine and Rehabilitation at the University of Michigan indicated that Plaintiff was not responding to their calls to schedule physical therapy sessions.  (Tr. 203-04).  Medical records indicate that Plaintiff obtained extremely good results with the epidural injection, was walking much better, and had decreased pain. (Tr. 204).  Plaintiff continued to take Celebrex.  *Id.*

There are no other medical reports in the record until August 2002 when Plaintiff indicated that his back pain had increased since the effects of the epidural had worn off.  (Tr. 206-07).  Plaintiff requested another epidural because the first had been so effective.  Plaintiff received a second epidural steroid injection in October 2002.  (Tr. 208).

The record is again devoid of medical reports until March 2003 when Plaintiff was seen by doctors at the Human Capability Corporation.  (Tr. 221).  Examination findings indicated that Plaintiff had normal deep tendon reflexes, 5/5 muscle strength in his upper and lower extremities, a normal gait, intact sensation, ability to walk on heels and toes without difficulty, and an ability to squat and rise. However, Plaintiff had a positive straight leg raising test on the left side at 30 degrees.  (Tr. 222).  An x-ray of Plaintiff's lumbar spine showed mild narrowing of disc space  at L5-S1.  (Tr. 224).

A DDS physician completed a residual functional capacity assessment in April 2003.  The physician reviewed Plaintiff's medical records from February 1999 up until March 2003.  (Tr. 227-235). He opined that these records and Plaintiff's reported daily activities did not support the severity of Plaintiff's alleged symptoms.  (Tr. 227).  Based upon his review of the records, the doctor further opined that Plaintiff could perform light work with unlimited pushing/pulling with his upper and lower extremities, stand and/or walk or sit for 6 hours out of an 8 hour workday with normal breaks, occasionally climb, balance, stoop, kneel, crouch, and crawl.  However, the doctor noted Plaintiff should avoid exposure to hazards such as machinery and heights.  (Tr. 229-30, 232).

An examination of Plaintiff in May 2003 showed that he had a negative heel drop test, normal muscle strength, good reflexes, and no muscle or motor deficits but a slight decrease in sensation was noted on Plaintiff's left lower extremity.  Plaintiff was instructed on lower back exercises and prescribed medication.  (Tr. 249).

Records from January 2004 indicate that Plaintiff reported worsening back pain, left leg cramps and spasms.  An examination revealed that Plaintiff had tenderness and tightness in his back, a positive straight leg raising test on the left at 45 degrees with reproduction of paresthesias.  However, Plaintiff was able to ambulate and get up from a sitting position and supine position without difficulty.  His gait was normal, he had 5/5 strength with flexion and extension both above the knee and below the knee without difficulty, had the ability to stand on his toes and heels without any difficulty, and had intact sensory functions.  (Tr. 248).  Laboratory findings showed chronic left radiculopathy, degenerative disc disease, and disc bulges.  (Tr. 240, 242, 244).  However, nerve conduction studies of Plaintiff's left leg were within normal limits and there was no evidence of peripheral neuropathy.  (Tr. 244-46).

Plaintiff was diagnosed with hypertension in February 2004, for which he was prescribed medication.  (Tr. 238).  He was also diagnosed with spinal stenosis.  *Id.*

In April 2004 Dr. Frank La Marca recommended that Plaintiff undergo an L5 hemilaminectomy. (Tr. 237).  The surgery was performed in May 2004.  (Tr. 107-08).  Medical records from October 2004 indicate that Plaintiff was doing quite well after his surgery although he complained of a recent recurrence of pain.  (Tr. 113).  Plaintiff had a good range of motion in forward flexion and extension with minimal pain, and pain in side bending, but he also had 5/5 strength.  *Id.*  Except for the pain, the examination results were normal.  *Id.*  Dr. Robert B. Kiningham noted that Plaintiff's pain was "not clearly debilitating at this point."  *Id.*  Dr. Kiningham also noted that Plaintiff was only taking Celebrex

and an occasional Aleve to manage his pain.  Plaintiff was instructed on various stretching and strengthening exercises and, upon request, was prescribed Ultram for nighttime pain.  *Id.*

IV.     **HEARING TESTIMONY**

       A.     **Plaintiff's Testimony**

       Plaintiff testified that he was born in May 1958 and that he had a high school education.  (Tr. 255).  He smokes 3 - 4 packs of cigarettes a week.  (Tr. 264).  Plaintiff stated that his CVA caused no symptoms and that his biggest problem was with the pain in his lower back, which radiates down his left leg.  (Tr. 260-62).  The pain in his leg is constant and he has left leg numbness, weakness, shooting pain, and cramping.  (Tr. 260-61).  Plaintiff told the ALJ that in 2002 or 2003 he used to drink 4 - 5 glasses of wine or

2 - 4 beers a day to help him sleep and relieve the pain but that he reduced that amount to a couple of beers a week when the medication helped with these problems.  (Tr. 265).  Plaintiff testified that his medication includes Tramadol for pain, Prilosec for acid reflux and Celebrex, which he substituted for Vicodin, and that he does not suffer any side effects from the medication.  (Tr. 271-72).  The doctors also prescribed physical therapy but Plaintiff informed the ALJ that he tried therapy three different times but could not handle it and his doctors said the therapy was not working.  (Tr. 263-64).  Plaintiff also testified that lying down provides him with some relief of his back pain.  (Tr. 263).

       The ALJ also asked Plaintiff to testify about the limitations resulting from his impairments which he had experienced prior to the expiration of his insured status date on December 31, 2004.  (Tr. 257-59).  Plaintiff testified that he could sit and stand for 15 - 20 minutes at a time, walk ½ block or less, lift a gallon of milk and pick up piece of paper.  (Tr. 260).  He stated that he used a

handrail to help him climb stairs at home.  (Tr. 279).  Plaintiff also indicated that he is unable to do

anything 2 - 4 days out of the month due to his symptoms. (Tr. 280).

When asked about his daily activities during the period at issue, Plaintiff testified that he

used to hunt and play softball but that he could not perform those activities anymore.  (Tr. 280).  He

also stated that he: (1) watched a little television and read a little; (2) drove to the store but the

driving bothered his back; (3)  had a hard time concentrating when reading or driving; (4) could only

sleep about one hour at a time and took daily naps every ½ hour to hour; (5) sometimes needed help

dressing himself and while he generally stayed downstairs, he would bathe in an upstairs tub twice a

week with the help of his wife; (6) occasionally fixed a light lunch by heating food in the microwave;

(6) did light dishwashing and laundry; and (7) did not grocery shop, clean the house or do yard work.

He further testified that the lack of activity caused him to gain weight.  (Tr. 262-63, 273-75, 277-79,

280).

### B.   Vocational Expert's Testimony

Annette Holder, a certified rehabilitation counselor, testified as a vocational expert at

the hearing.        (Tr. 44, 283-86).  The ALJ asked Ms. Holder about the type and number of jobs

available in Michigan for hypothetical individuals of Plaintiff's age, education, and work experience[1]

who had different residual functional capacities ("RFC").  The first hypothetical individual described

by the ALJ was based upon the DDS physician's assessment and had the RFC to: (1) lift or carry 10

pounds frequently and 20 pounds occasionally; (2) stand, walk or sit with normal breaks for a total

of 6 hours out of an 8 hour workday; (3) perform pushing/pulling motions with his upper and lower

---

[1]        Ms. Holder testified that Plaintiff's prior work as a machine operator and job
setter is categorized as heavy, skilled work but that Plaintiff performed that work in the
heavy to very heavy work category.  (Tr. 283).

-8-

extremities but within the weight restrictions noted; and (4) only occasionally climb, balance, stoop, crouch, kneel, and crawl. Such an individual would also need to avoid unprotected heights and moving machinery. (Tr. 283-84). Ms. Holder testified that such an individual could perform unskilled, light work and that the jobs fitting this description in southeast Michigan include: 3,200 packer jobs, 2,350 sorter jobs, 1,200 security guard jobs, and 22,000 cashier positions. *Id.*

The second hypothetical individual described by the ALJ had the RFC to only: (1) carry or lift small articles frequently and 10 pounds occasionally; (2) stand or walk with normal breaks for a total of 2 hours in an 8 hour workday; (3) sit with normal breaks for a total of 6 hours out of an 8 hour workday; (4) perform pushing/pulling motions with his upper and lower extremities but within the weight restrictions noted; and (5) occasionally climb, balance, stoop, crouch, kneel, and crawl. Such an individual would also need to avoid unprotected heights and moving machinery. (Tr. 284-85). Ms. Holder testified that such an individual could perform unskilled, sedentary work that provide for a sit/stand option and that the jobs fitting this description in southeast Michigan include: 1,100 visual surveillance monitor jobs, 1,200 visual inspector jobs, 1,600 information clerk jobs and 1,200 ID clerk jobs. (Tr. 285).

The third hypothetical individual described by the ALJ lacked the RFC to sustain the concentration, persistence and pace necessary to consistently fulfill work for 8 hours a day, 5 days a week. Ms. Holder testified that such an individual would be precluded from all competitive employment. (Tr. 285-86).

## IV.   THE ALJ'S FINDINGS

The ALJ concluded that Plaintiff was insured for benefits through December 31, 2004 and that he had not engaged in substantial gainful activity since the alleged onset date of February 8, 1999. (Tr. 27). She further found that Plaintiff's impairments of back pain, status post L4-L5

laminectomy, history of cerebrovascular disease, history of alcoholism, hypertension and obesity are severe but that they do not meet or medically equal any listed severe impairments.  (Tr. 27).

The ALJ also surmised that Plaintiff could not perform his past relevant work but that he retains the RFC to perform a limited range of sedentary work.  *Id.*  Plaintiff's claim was denied because the ALJ determined that there were a significant number of jobs available in the regional economy for a person of Plaintiff's age, educational level, work experience and RFC.  *Id.* Furthermore, the ALJ determined that Plaintiff's allegations about his limitations were not totally credible.  *Id.*

## V.    LAW AND ANALYSIS

### A.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  It is not the function of this court to  try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite

-10-

conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.      FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)      he was not presently engaged in substantial gainful employment; and

(2)      he suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.      ARGUMENTS

The ALJ found that Plaintiff has the RFC to perform a limited range of sedentary work that provides for a sit/stand option, that does not entail work around unprotected heights and moving machinery, and that requires Plaintiff to only: (1) stand and/or walk for no more than 2 hours out of

-11-

an 8 hour workday with normal breaks; (2) sit for a total of 6 hours out of an 8 hour workday with normal breaks; (3) push/pull with his upper and lower extremities within the aforementioned weight restrictions; and (4) occasionally climb, balance, stoop, crouch, kneel, and crawl.[2]  (Tr. 27).  The ALJ based her RFC finding, in part, upon the assessment by the DDS physician to the extent she found it consistent with the objective medical evidence.  (Tr. 24).  Although the DDS physician indicated that Plaintiff could perform light work and could stand and/or walk for a total of 6 hours out of an 8 hour workday, the ALJ elected to limit Plaintiff to only sedentary work with a sit/stand option that did not require him to sit and/or stand for more than a total of 2 hours out of an 8 hour workday.  *Id.*

Plaintiff asserts that this RFC finding is not supported by substantial evidence.  Specifically, Plaintiff alleges that the ALJ erred in finding him less than totally credible in regard to his allegations of debilitating pain by: (1) failing to find that Plaintiff's impairments could reasonably be expected to produce the severity of pain alleged; (2) improperly focusing on the lack of medical treatment between November 2001 to August 2002; (3) relying on the opinion of a state agency physician who had not reviewed Plaintiff's entire medical record; and (4) neglecting to afford Plaintiff substantial credibility based on his long and continuous work history.  Defendant contends that the ALJ's RFC and credibility determinations were proper and are supported by substantial evidence.

"It is well-established that pain alone, if the result of a medical impairment, may be severe enough to constitute disability."  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  A claimant's

---

[2]      "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567, 416.967(a).

statements as to pain, however, will not alone establish that he is disabled.  *See Walters*, 127 F.3d at 531;

see also 20 C.F.R. § 404.1529(a).  The Sixth Circuit has developed a two-prong test to evaluate a

claimant's assertions of disabling pain:

> First, we must examine whether there is objective medical
> evidence of an underlying medical condition. If there is, we
> then examine: (1) whether objective medical evidence confirms
> the severity of the alleged pain arising from the condition; or
> (2) whether the objectively established medical condition is of such a
> severity that it can reasonably be expected to produce the alleged
> disabling pain.

*Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1 986)); see also 20 C.F.R. §

404.1529(a).

Notwithstanding the above, the ALJ cannot rely solely on the lack of objective medical evidence

because the regulations explicitly provide that "we will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your ability to

work solely because the available objective medical evidence does not substantiate your statements."

20 C.F.R. § 404.1529(c)(2).  In addition to the available objective medical evidence, the ALJ must

consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of

claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than

medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and

restrictions due to the pain.  See 20 C.F.R. § 404.1529(c)(3); see also *Felisky v. Bowen*, 35 F .3d 1027,

1039-40 (6th Cir. 1994) (applying these factors).

Moreover, because pain is a largely subjective matter, an ALJ may properly consider the

claimant's credibility in evaluating her complaints of disabling pain.  *See Walters*, 127 F.3d at 531.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the

-13-

medical reports, claimant's testimony, and other evidence." *Id.* Furthermore, an ALJ's findings based on the credibility of the claimant are to be accorded great weight and deference. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *See id.*

The ALJ properly applied these standards and thoroughly considered Plaintiff's complaints of disabling pain. First, she found Plaintiff suffered from underlying medical conditions-specifically severe back pain and post L4-L5 laminectomy. However, the ALJ concluded that the evidence of record did not establish that these impairments could reasonably be expected to give rise to pain so severe that it precluded Plaintiff from performing a limited range of sedentary work as set forth in her RFC.

The ALJ noted that the objective medical evidence supported a conclusion that, despite his claims of disabling pain, Plaintiff could perform a limited range of sedentary work. This determination is supported by substantial evidence. Examination findings between February 1999 and March 2003 were often essentially normal with notations made that Plaintiff had a full range of motion, normal gait, good muscle strength, and normal reflexes. (Tr. 127, 129-30, 133, 144, 149, 154, 222, 248, 249). It was noted in March 2003 that Plaintiff had the ability to walk on heels and toes and to squat and rise without difficulty. (Tr. 222). The records also indicate that Plaintiff's pain was effectively managed by non-prescription and prescription medication, physical therapy, and epidural injections. The ALJ also noted that Plaintiff did not claim to suffer from any medicinal side effects and that Plaintiff had discontinued taking Vicodin, although prescribed, due to concerns of addiction. (Tr. 20, 271-72).

The ALJ also commented that the DDS physician who reviewed Plaintiff's medical records from February 1999 through March 2003 also concluded that these records were not consistent with Plaintiff's claim of disabling pain. Contrary to Plaintiff's assertions, the ALJ properly relied upon the DDS physician's opinion to the extent it was supported by the record. Because the DDS physician had not reviewed Plaintiff's medical records beyond March 2003, the ALJ did not fully adopt his RFC

-14-

recommendations.  Instead, the ALJ reviewed the records beyond March 2003.  Examination findings from this time period showed that Plaintiff had good muscle strength and reflexes, no muscle or motor deficits, an ability to ambulate and to stand on his heels and toes without difficulty, normal nerve conduction studies, and no evidence of peripheral neuropathy.  To the extent Plaintiff had a continuing back problem, surgery effectively treated it.  (Tr. 107-08, 113, 237, 244-49).

As part of her review of the post-March 2003 evidence, the ALJ also considered and afforded significant weight to the statement of Dr. Kiningham who stated in October 2004 that Plaintiff's pain was "not clearly debilitating at this point" and was being managed with Celebrex and an occasional Aleve.  (Tr. 113).

The ALJ further cited to the DDS physician's conclusion that Plaintiff's reported daily activities were not consistent with Plaintiff's alleged disabling pain.  The Regulations specifically instruct ALJs to consider evidence of a claimant's daily activities.  20 C.F.R. § 404.1529(c)(3).  The DDS physician referred to Plaintiff's report that he shops for groceries for 20 - 30 minutes with periodic rest, does laundry and cooks 2 - 3 times a week with occasional help from family, drives when necessary, and is semi-independent with his self-care.  (Tr. 87-88, 227, 230).  In discussing Plaintiff's medical records, the DDS physician also commented that Plaintiff had a recurrence of pain after sleeping in a tent, referring to Plaintiff's family reunion camping trip in August 2001.  (Tr. 187, 195, 230).

The ALJ also noted that there was a lack of treatment between November 2001 and August 2002, referring to the period of "marked improvement" in Plaintiff's condition after which he had received his first epidural injection.  (Tr. 22, 24).  An ALJ may properly examine evidence of a claimant's treatment history or lack thereof in assessing Plaintiff's credibility.  *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 96-7p, 1996 WL 374186 *7 (". . . the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.").  In this case, the ALJ found it

-15-

significant that Plaintiff did not require any treatment for almost a 9 month period after receiving an epidural injection

The Court concludes that substantial evidence supports the ALJ's RFC and credibility determinations.[3]   Although Plaintiff points to evidence in the record that could support contrary determinations, including Plaintiff's long and continuous employment history[4], it is the role of the ALJ, not the court, to weigh the evidence and resolve any conflicts therein.   *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)("Our role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony. Instead, we focus on whether substantial evidence supports the Commissioner's decision...").

## VI.   <u>RECOMMENDATION</u>

---

[3]      The hypothetical fully incorporates the RFC as found by the ALJ.   Thus, the hypothetical provided the VE with an accurate description of Plaintiff's exertional and non-exertional impairments.   Therefore, the VE's testimony regarding the jobs in southeast Michigan for someone of Plaintiff's age, vocational profile, education and RFC is sufficient evidence to support the ALJ's step five finding that Plaintiff is not disabled.   *Varley*, 820 F.2d at 779.

[4]      Plaintiff points to an 8th Circuit case wherein the Court pointed to the claimant's long work history as evidence entitling him to substantial credibility.   *See Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir. 1984).   Plaintiff does not point to any Sixth Circuit case law that suggests a claimant with a long work history is more credible than any other claimant.   Although an ALJ may properly consider a claimant's proven motivation to work (or not work) when assessing credibility, it is but one factor to be considered.   *See e.g., Felisky*, 645 F.3d at 1041.   Plaintiff's work history is not discussed by the ALJ in the context of her credibility determination but there is no requirement that the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required").

The Commissioner's decision is supported by substantial evidence.  Defendant's Motion for Summary Judgment (Docket # 8) should be **GRANTED**.  Plaintiff's Motion for Summary Judgment (Docket # 7) should be **DENIED** and his Complaint **DISMISSED WITHOUT PREJUDICE**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 27, 2006                         s/ Mona K. Majzoub                        
                                                 MONA K. MAJZOUB
                                                 UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 27, 2006                         s/ Lisa C. Bartlett                        
                                                 Courtroom Deputy